UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STEPHEN J. ELLIS

      Plaintiff,

v.
THE BANK OF NEW YORK MELLON, f/k/a
THE BANK OF NEW YORK, AS TRUSTEE
For Asset Backed Funding Corp Asset:
Backed Certificates,
Series 2004-FF1, AND
NATIONSTAR MORTGAGE, LLC. D/B/A
MR. COOPER

      Defendants

C.A. No.: 24-CV-40148- MRG

## PLAINTIFF'S MEORANDUM IN SUPPORT OF
## EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff Stephen J. Ellis ("Plaintiff"), herein, by and through undersigned, respectfully submits his Emergency Motion for Preliminary Injunction, or in the Alternative Temporary Restraining Order, with Memorandum of Law In Support incorporated herein, against THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK, AS TRUSTEE, For Asset Backed Funding Corporation, Asset Backed Certificates, Series 2004-FF ("BONY"), to stop its/their intended **May 12, 2024 statutory foreclosure auction sale** of Plaintiffs' real property located at 4 Guinevere Circle, Shrewsbury, Massachusetts 01545.

There is presently a pending Motion filed by the Defendant for Judgment on the Pleadings which has been fully briefed and awaiting hearing thereon (ECF #13, #14, #15).

Plaintiff's counsel has been in contact with Defendant's counsel regarding the rescheduling of the foreclosure auction dates during the pendency of this matter. However, after the last postponement, a renewed auction date was scheduled for May 12, 2025. During this time counsel had communicated as to a further postponement. Defendant's counsel informed undersigned that he was going to be travelling during the week of April 21, 2025 to April 27, 2025, and would revisit discussions relative to inquiring with his client as to a further continuance.

Upon Defendant's counsel's return, he suggested that Plaintiff file the Motion for Injunction as he could not now guarantee that his client would acquiesce to a further continuance of the scheduled May 12, 2025 auction.

Undersigned has also recently learned of a serious family illness to which undersigned will be required to now unexpectedly travel to San Diego California, which now creates an emergency time frame for the instant Motion to be heard prior to the May 12, 2025 auction sale.

With regard to the basis of Plaintiff's request for a Preliminary Injunction.

As an initial observation, where there is currently a pending Motion for Judgment on the Pleadings that is currently fully briefed before this Court, the Plaintiff respectfully would request that should the Court Deny the Defendant's Motion, such denial would appear to present a sufficient basis for the Plaintiff to argue a likelihood of success on the merits of the case

Plaintiff herein, by and through undersigned, due to the above, respectfully submits his Emergency Motion for Preliminary Injunction, or in the Alternative Temporary Restraining Order, with Memorandum of Law In Support incorporated herein, against THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK, AS TRUSTEE, For Asset Backed Funding Corporation, Asset Backed Certificates, Series 2004-FF ("BONY"), to stop its/their intended

**May 12, 2024 statutory foreclosure auction sale** of Plaintiffs' real property located at 4 Guinevere Circle, Shrewsbury, Massachusetts 01545.

A stated above, there is presently a pending Motion filed by the Defendant for Judgment on the Pleadings which has been fully briefed and awaiting hearing thereon (ECF #13, #14, #15).

Plaintiff's counsel has been in contact with Defendant's counsel regarding the rescheduling of the foreclosure auction dates during the pendency of this matter. However, after the last postponement, a renewed auction date was scheduled for May 12, 2025. During this time counsel had communicated as to a further postponement. Defendant's counsel informed undersigned that he was going to be travelling during the week of April 21, 2025 to April 27, 2025, and would revisit discussions relative to inquiring with his client as to a further continuance.

Upon Defendant's counsel's return, he suggested that Plaintiff file the Motion for Injunction as he could not now guarantee that his client would acquiesce to a further continuance of the scheduled May 12, 2025 auction.

Undersigned has also recently learned of a serious family illness to which the undersigned will be required to now unexpectedly travel to San Diego California on May 08, 2025, which now creates an emergency time frame for the instant Motion to be heard prior to the May 12, 2025 auction sale.

With regard to the basis of Plaintiff's request for a Preliminary Injunction.

As an initial observation, where there is currently a pending Motion for Judgment on the Pleadings that is currently fully briefed before this Court, the Plaintiff respectfully would request that should the Court Deny the Defendant's Motion, such denial would appear to present a sufficient basis for the Plaintiff to argue a likelihood of success on the merits of the case.

The Plaintiff is entitled to the requested relief because he faces a substantial risk of irreparable harm if the requested relief is denied. The Plaintiff has a substantial likelihood of success on the merits in this case, and the Defendant(s) would suffer far less harm if this request for relief is granted.

Where the Defendant BONY has specifically sought to utilize the power of sale under G.L. c. 244, §14, and where it/they do not meet the strict *statutory definition* of term "mortgagee" under G.L. c. 244 § 14, any purported foreclosure auction conducted by this Defendant would be judicially found to be void. Plaintiff identifies that the Defendant BONY's initiation of its foreclosure by publication under G.L. c. 244, §14 is void, and upon many distinct foundational grounds, that include, but are not limited to the following:

- The Defendant BONY was not the Plaintiff's original "Lender". See Verified Complaint at ¶8 [ECF# 12, p. 25], and its attached Exhibit A at ECF #12, P. 26 [Bates ELLIS-027]

- Therefore Defendant BONY  make claim to enforce the power of sale in Plaintiff's mortgage as a purported downstream assignee, who claims to have acquired from entity(s) who acquires the Plaintiff's loan from the original lender and under SJC precedent must produce a chain of assignment that "traces" its genesis back through all intermediaries to the original lender [See Verified Complaint at ¶¶31-35 at ECF #12, P. 27].

- Defendant BONY has failed to document an intact chain of title to the Plaintiff's Mortgage where, 1) First Franklin Financial Corporation purports to execute an assignment of Plaintiff's Mortgage to Defendant BONY on May 18, 2004, yet only in a later May 21, 2009 assignment does Defendant BONY state that First Franklin Financial Corporation receive an assignment of the Plaintiff's Mortgage from the original lender (Drew Mortgage Associates, Inc.), See Verified Complaint at ¶¶14-22, ECF #12, p. 25-26; and its attached Exhibit A at ECF #12, P. 71-72 [Bates ELLIS-033, ELLIS—032].

- First Franklin Financial Corporation could not assign the Plaintiff's Mortgage to Defendant BONY in 2004, when it purports not to have received the same until May 21, 2009.

- Defendant BONY [through its mortgage servicer and co-Defendant Nationstar Mortgage, LLC, D/B/A Mr. Cooper] causes both of the above assignments to be filed

4

on September 09, 2009.

- Plaintiff identifies that mere recordation of documents on a registry of deeds cannot "magically" transform an otherwise legally invalid document to become suddenly viable, [See Verified Complaint at ¶21, ECF #12, p. 27];  ¶108, ECF #12, p. 35, citing *Bevilacqua v. Rodriguez,* 460 Mass. 762, 771 (2011)]

- Defendant BONY also fails to explicate its identification of JPMorgan Chase Bank, N.A. as a purported predecessor "Trustee" of the same Trust in its purported 3rd and 4th "assignments" [See Verified Complaint at ¶¶23-30 [ECF #12, p.. 26-27; and attached Exhibit A at ECF #12, P. 74, 77 [Bates ELLIS-035, ELLIS—038].

- Defendant BONY also fails to identify purported transfers of the Plaintiff's Mortgage as described in the Defendant Trust's Governing Document Pooling and Servicing Agreement ("PSA"). " [See Verified Complaint at ¶¶45-59 [ECF #12, p.. 28-29 and attached Exhibit A at [ECF #12, p.. 95,  and specifically at, ELLIS—077 [ECF #12, p.. 116;, ELLIS-088, [ECF #12, p.. 127] ELLIS-100 [ECF #12, p.. 139], [ECF #12, p.. 144] ELLIS-105].

- Massachusetts is a title theory jurisdiction, and an assignment/sale of a mortgage represents a transfer of an interest in land requiring a writing signed by a Grantor,

- Plaintiff identifies that Defendant BONY [as a claimed entity who acquired the Plaintiff's Mortgage from another party(s) who claimed to acquire from the original lender needed to provide a chain of title that "traces" title back through the intermediary(s) to the original lender [See Verified Complaint at ¶46 citing *U.S. Bank Nat'l Ass'n  v. Ibanez,* 458 Mass. 637, 651 (2011)]. [ECF #12, p.. 29, ¶46,]

- Defendant also failed to provide a showing that it was in physical possession of the Plaintiff's Note at the time pf the first publication of sale, lender [See Verified Complaint at ¶¶21-¶25; ¶28, ¶53, ¶55, ¶60, ¶75, ¶77,  ¶87,¶99,¶100, ¶101,, ¶103, ¶112, ¶114, ¶120, ¶121, ¶122, ¶124, ¶125, ¶126, ¶127, ¶129, ¶132 ]. [ECF #12, p.p. 26-39]

- Plaintiff plausibly makes fact based allegation that is plausible on its face that Defendant BONY has clearly failed to meet statutory muster to utilize the Massachusetts extra-judicial foreclosure remedy under G.L. c. 244, §14, and G.L. c. 183, §21.

- Based upon Plaintiffs request for Declaratory Judgment in Count I of his verified complaint, and the documents recorded upon his title at the Worcester County Registry of Deeds, the Defendant BONY has/have not definitively established that it/they is/are a proper party to enforce the power of sale under G.L. c. 244 § 14, under the requirements enunciated by the Supreme Judicial Court in *Eaton v. Fed Nat. Mortgage Ass'n*, 462 Mass. 569 (2012).

- The above paragraph precludes the Defendant BONY from claiming that it is in current contractual privity with Plaintiff (and/or its unnamed beneficial owners).

- Therefore, Defendant BONY has/have not met the strict statutory definition of "mortgagee" under G.L. c. 244 § 14, and therefore is being plausibly challenged as to its attempted use of G.L. c. 244, §14.

## DISCUSSION

I. **Massachusetts G.L. c. 244 § 14, And Non-Judicial Foreclosure Requirements In The Commonwealth.**

Mortgage foreclosure in the Commonwealth operates as a "creature of contract" and statute. An "assignment of mortgage" is a transfer of an interest to title to real property [as Massachusetts is a "title-theory" jurisdiction])",see U.S. Bank v. Ibanez, 458 Mass. 637, 649 (2011). Therefore, the institution of the non-judicial foreclosure process in Massachusetts does not operate as a function of any judicial proceeding[1]. G.L. c. 244 § 14 came under scrutiny by the Massachusetts Supreme Judicial Court ("SJC"), in *U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637 (2011)[2],

*"Massachusetts does not require a mortgage holder to obtain judicial authorization to foreclose on a mortgaged property See G.L. c. 183 § 21; G.L. c. 244 § 14"*, <u>Ibanez</u> 458 Mass. at page 649.

Where a mortgagor grants a mortgage holder the power of sale, it includes by reference, the power of sale set out in G.L. c. 183 § 21, and further regulated by G.L. c. 244, §§ 11-17C. Additionally, under G.L. c. 183 § 21, after a mortgagor **_defaults in the performance of the underlying note_**, **_the "mortgagee"_** may enforce the power of sale, and auction the property at a public sale, extinguish the mortgagor's right of redemption, and convey the property to the purchaser in fee simple, and such [legally valid] sale shall forever bar the mortgagor and all

---

[1] Outside of the limited judicial proceeding that needs to be initiated by the foreclosing entity in the Land Court under the Servicemembers Civil Relief Act.

[2] Plaintiffs' counsel successfully represented the *LaRace* family in Ibanez.

claiming under him, all right and interest in the mortgaged premises, whether at law or in equity." <u>Ibanez</u> on page 13. [emphasis added].

Indeed, G.L. c. 244 § 14, came under further scrutiny by the SJC in *Eaton v. Fed Nat. Mortgage Ass'n*, 462 Mass. 569 (2012). In *Eaton*, the Supreme Judicial Court definitively stated that for foreclosure auction sales **noticed *after* June 22, 2012**, the foreclosing entity claimant must also show its authority to enforce a borrower's Note, as well as the mortgage.[3] Here, the Defendant Trustee sent the mandatory notice of auction sale to Plaintiffs on June 10, 2016, and thus the holding of *Eaton* is clearly applicable to the instant fact pattern.

Clearly, the SJC stated in *Eaton* that the foreclosing entity (such as Defendant here) claiming to be the "holder" of the Note, must show that either; it is the note ***owner***, or ***acting as agent for the note owner***:

> "..the term "note holder" is used to refer to **a person or entity owning the "mortgage note."** *Eaton*, at n. 2

**II.    Under G.L. c. 244, §14, The Foreclosing Entity Must Prove That It Had The Right To Enforce A Borrower's Note *at The Time of Notice*, and/or First Publication of Auction**

Indeed, the Defendant BONY caused to be filed upon the title to the Plaintiffs' real property at the Worcester County Registry of Deeds, a document to "comply" with Section 35C of Chapter 244 [Ver. Complaint, ¶64, and attached to Plaintiff's complaint at Exhibit A- [ECF #12, P. 93-94, Bates ELLIS-054 to ELLIS-055]

---

[3] Thus, cases decided after June 22, 2012 would still be "pre-Eaton" (only need to be a holder of the mortgage with no review of the Note to be a "mortgagee") if the first date of publication and Notice occurred prior to this date Indeed, many cases both at the trial court and appellate level have confused this fact.

In this "document" a Defendant BONY's co Defendant mortgage servicer [Nationstar Mortgage, LLC, d/b/a Mr. Cooper] avers that as a "Foreclosure Associate II", this employee only reviews "business records" and electronic "data compilation", not physical paper notes.

Defendant BONY attempts to rely upon an extra judicial G.L. c. 244, §35C Affidavit filed upon a Registry without notice to Plaintiff, in a contested matter, to "prove" that BONY was in possession of the Plaintiff's Note at the time of the Noice of Sale. Leaving aside the BONY "where's waldo" issue of who claims to own possession of the Plaintiff's Note, G.L. c. 244, §35C(b) only has application ***to arm's length third party purchasers***:

> (b) A creditor shall not cause publication of notice of foreclosure, as required under section 14, when the creditor knows or should know that the mortgagee is neither the holder of the mortgage note nor the authorized agent of the note holder.
>
> Prior to publishing a notice of a foreclosure sale, as required by section 14, the creditor, or if the creditor is not a natural person, an officer or duly authorized agent of the creditor, shall certify compliance with this subsection in an affidavit based upon a review of the creditor's business records. The creditor, or an officer or duly authorized agent of the creditor, shall record this affidavit with the registry of deeds for the county or district where the land lies. The affidavit certifying compliance with this subsection shall be conclusive evidence in favor of an **arm's-length third party purchaser for value**, at or subsequent to the resulting foreclosure sale, that the creditor has fully complied with this section and the mortgagee is entitled to proceed with foreclosure of the subject mortgage under the power of sale contained in the mortgage and any 1 or more of the foreclosure procedures authorized in this chapter; provided that, the arm's-length third party purchaser for value relying on such affidavit shall not be liable for any failure of the foreclosing party to comply and title to the real property thereby acquired shall not be set aside on account of such failure. The filing of such affidavit shall not relieve the affiant, or other person on whose behalf the affidavit is executed, from liability for failure to comply with this section, including by reason of any statement in the affidavit. For purposes of this subsection, the term "arm's-length, third party purchaser for value" shall include such purchaser's heirs, successors and assigns.

It is undisputed that Plaintiff is NOT a third party purchaser for value. In this contested foreclosure matter, Defendant BONY has adduced no credible evidence of being in possession of the Plaintiffs' Note at the time of the Notice of Sale, and for this reason alone, Plaintiff is likely to succeed on Count I and Count II of his verified complaint..

Further, nowhere in this purported "Affidavit does the Affiant state that they were a personal eye witness to have seen the Plaintiff's Note, nor cite to any specific custodial record, or indeed to and specific "record" at all, gjust a general unidentified and unattached "business records". A note, nor a copy thereof would be considered a "business record". Where, Defendant claims that the Note is indorsed in blank (as owner), this requires proof of delivery and physical possession of the Note.

This is a contested foreclosure matter, and the claim that a statutory Affidavit could be used to conclusively prove the truth of the matter asserted to "comply" with G.L. c. 244, §14, with out any ability to challenge, assail, or attack said document (which was never served upon Plaintiff), would represent an offense to procedural due process. The state action would be supplied by the legislative language of the statute itself.

However, nothing within G.L. c. 244, §35C states that if filed that this serves to "comply" with G.L. c. 244, §14, but merely that these Affidavits are filed solely to comply with "this section" [G.L. c. 244, §35C], and this "subsection" [G.L. c. 244, §35C(b)], which requires such filing PRIOR to the publication of sale under G.L. c. 244, §14.

G.L. c. 244, §35C(b) merely states that the failure to "comply" with this statute [by itself] will overturn a foreclosure sale to a third party. The statute indisputably says nothing about these Affidavits showing compliance with G.L. c. 244, §14, nor could it without offense to procedural due process. [See Verified Complaint at ECF #12, pp. 26-39]

Again, Plaintiff challenges that BONY has failed to meet its burden to have shown compliance with all ***strict statutory requirements*** to utilize the Massachusetts extra judicial foreclosure process, see *U.S. Bank v. Ibanez*, 458 Mass. 637, 646-647 (2011)

**III.    Under G.L. c. 244, §14, Where Claiming As A Downstream Assignee, The Foreclosing Entity Must Prove That It Was Also In Possession Of A Legally Valid**

9

**Assignment of Mortgage *at The Time of Notice*, and/or First Publication of Auction**

As stated above, G.L. c. 244, §14 requires strict adherence to all statutory requirements, see Ibanez, 458 Mass, 637, at 647:

"Recognizing the substantial power that the statutory scheme affords to a mortgage holder to foreclose without immediate judicial oversight, we adhere to the familiar rule that "one who sells under a power [of sale] must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void." Moore v. Dick, 187 Mass. 207, 211 (1905). See Roche v. Farnsworth, 106 Mass. 509, 513 (1871)."

One of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose. The "statutory power of sale" can be exercised by "the mortgagee or his executors, administrators, successors or assigns." G. L. c. 183, § 21. Under G. L. c. 244, § 14, "[t]he mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person" is empowered to exercise the statutory power of sale. Any effort to foreclose by a party lacking "jurisdiction and authority" to carry out a foreclosure under these statutes is void. Chace v. Morse, 189 Mass. 559, 561 (1905), citing Moore v. Dick, supra."

Defendant BONY has failed to establish physical possession of the Plaintiffs Note ***at the time of the Notice of Sale***. Therefore, without more, this Defendant cannot show that it has "strictly followed the terms" of G.L. c. 244, §14, and the publication is void.

However, in addition, where Defendant cannot not show possession of the Plaintiffs' Note, any claim by Defendant to enforce a Mortgage securing that Note, must also be found to represent "nothing of value, see *Eaton v. Fed. Nat'l Mortgage Ass'n*, 462 Mass. 569, 576-577 (2012):

"Under our common law, where a mortgage and note are separated, "the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment." Ibanez, 458 Mass. at 652, citing Barnes v. Boardman, 149 Mass. at 114. See Wolcott v. Winchester, 15 Gray at 465 ("The party holding such legal estate [i.e., mortgagee holding only mortgage without underlying note] no doubt holds the same in trust for the party owning the debt, where the entire debt secured by a mortgage has been parted with"); Young v. Miller, 6 Gray at 154 (where indorsee of note is without assignment of mortgage securing the note, "the law may well imply the intention of the parties that the mortgage is thenceforth to be held

by the mortgagee in trust for the indorsee. In other words, such a transaction might manifest a resulting trust"); Sanger v. Bancroft, 12 Gray 365, 367 (1859) ("A mortgage cannot be made available without connecting it with the debt or duty secured thereby. **To one who has not the debt, it is of no value as property, as it could at most be only resorted to as a trust for the benefit of the holder of the note").** See generally 1 F. Hilliard, Mortgages at 216 n.(c) ("The assignment of a mortgage, without the debt, creates at most a *naked trust*" [emphasis in original]); id. at 217 ("[The mortgage] has no determinate value. If it should be assigned, the assignee must hold the interest at the will and disposal of the creditor who holds the bond"). [Note 10]"

Here, Defendant BONY claims as a purported downstream assignee, who claims it acquired Plaintiff's Mortgage from entity(s) that claim to have acquired Plaintiff's Mortgage from the original lender, see Ibanez, at p. 651:

"Where a pool of mortgages is assigned to a securitized trust, the executed agreement that assigns the pool of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage at issue as among those assigned, may suffice to establish the trustee as the mortgage holder. **However, there must be proof that the assignment was made by a party that itself held the mortgage**. See In re Samuels, 415 B.R. 8, 20 (Bankr. D. Mass. 2009). A foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage. See In re Parrish, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005) ("**If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claiman**t"). The key in either case is that the foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale (or the foreclosing entity must be one of the parties authorized to foreclose under G. L. c. 183, § 21, and G. L. c. 244, § 14)."

Defendant BONY claims to rely upon a "pool of mortgages assigned to a securitized trust", and further relies upon an "schedule of the pooled mortgage loans that would place Plaintiff's mortgage among those assigned to the BONY Trust. However, the entity claiming to "assign" the Plaintiff's Mortgage to the BONY Trust is identified as "Asset Backed Funding Corporation ("ABFC"), or "Depositor", see Verified Complaint at ¶72-¶79 [ECF #12, pp. 32-33], and

11

Exhibit A- [ECF #12, p. 116, Bates ELLIS-077. The Defendant BONY PSA further states that ABFC acquired the Mortgage Loans under an agreement with the "Seller" entitled a "Mortgage Loan Purchase Agreement dated July 30, 2004, see Verified Complaint at ¶48 [ECF #12, p. 49], and Exhibit A-,[ECF #12, p. 49], Bates ELLIS-088.

The PSA defines the Seller as "Bank of America, N.A., [see Verified Complaint at Exhibit A- [ECF #12, p. 49], Bates ELLIS-100].

      These "transfer(s)/sale(s) of the Plaintiff's Mortgage represent a transfer of an interest in land requiring a writing signed by the Grantor, see U.S. Bank v. Ibanez, 458 Mass. 637, 649 (2011). Defendant BONY fails to account for these purported "transfers". Defendant BONY also fails to include any writing from Drew Mortgage, as original lender to Bank of America as "Seller".

      Further, Defendant BONY's chain of assignments is additionally fatally flawed where reviewing the first two purported "assignments. Defendant BONY "relies" upon an Assignment from First Financial Corporation to the Plaintiff BONY that was executed on May 18, 2004,[see Verified Complaint at ¶28, and Exhibit A at [ECF #12, p. 72] Bates ELLIS-033]. Yet, Defendant BONY also "relies" upon an additional assignment that First Franklin Financial Corporation did not receive an assignment of the Plaintiff's Mortgage from the original lender[Drew Mortgage Associates, Inc.] until May 21, 2009, see Verified Complaint at ¶29, , [ECF #12, p.27 ] and Exhibit A at [ECF #12, p. 71, ]Bates ELLIS-032].

      Defendant BONY (and its co Defendant Nationstar Mortgage, LLC, d/b/a Mr. Cooper) deceptively try to overcome this fatal impediment by "recording" both documents on September 09, 2009. Plaintiff identified that the SJC has definitively held that mere recordation of a document cannot change an otherwise legally invalid document to "magically" become viable, [see Verified Complaint at ¶35, citing Bevilacqua v. Rodriguez, 460 Mass. 762, 771 (2011)]. [ECF #12, p. 27]

In *Eaton v. Fed Nat'l Mortgage Ass'n*, 462 Mass. 569, n. 10, the SJC explicated [in light of the finding that a "mortgagee" is now to be defined as one being in possession of the Note and Mortgage (or valid assignment thereof)], that a holder of a mortgage solely ***could not undertake any "affirmative act"*** as it would merely be a resulting trustee:

> "[Note 10] Citing In re Marron, 455 B.R. 1, 6-7 (Bankr. D. Mass. 2011), the defendants suggest that because a mortgage and note can be separated, with the mortgage held in trust for the note holder, a mortgagee with "bare legal title" should be able independently to foreclose on the mortgage property as the trustee of the note holder, and thereafter account to the note holder for the sale proceeds. The argument, however, fails to take into account the nature of the trust at issue. This trust is an equitable device that may qualify as a resulting trust, see Young v. Miller, 6 Gray 152, 154 (1856); **it is not an express trust that vests specific, independent authority in the trustee to foreclose on the trust property** *or to take other affirmative acts*. A resulting trust "is a reversionary, equitable interest implied by law in property that is held by a transferee, in whole or in part, as trustee for the transferor or the transferor's successors in interest." Restatement (Third) of Trusts § 7 (2003). The duties of a trustee of a resulting trust are limited -- he or she "is under a duty to merely transfer the trust property or the reversionary portion thereof to the reversionary beneficiary or in accordance with that beneficiary's directions. Until the property is so transferred, the title holder remains trustee with a duty to preserve the affected property and its product and to perform any other duties appropriate to the resulting-trust relationship." Id. at § 7 comment e."

An "assignment of mortgage" would be an "affirmative act" autonomously undertaken by MERS under the 2009 purported" assignment".

Thus, where G.L. c. 244, §14, requires a foreclosing entity to be in possession of the borrower's Note (or agent thereof) and also in possession of a legally valid assignment of mortgage at the time of publication, Defendant BONY fails to establish its ability to utilize the Massachusetts extra judicial remedy, and Plaintiff has a high likelihood of success on the underlying merits of Count I, seeking to have this Court find that Defendant BONY's publication of auction is void.

**ARGUMENT**

I. <u>**Plaintiffs Likelihood of Success on the Merits**</u>

In Massachusetts, it is well settled that where parties Have no claim of ownership of the property that is the subject of the lawsuit, they have no standing to bring [defend] the suit. *Capital Site Mgmt. Assoc. v. Mercantile Bank & Trust Co.*, 1995 Mass.Super. LEXIS 138, 8-9 (Mass. Super. Ct. Sept 18, 1995.). Thus, the court in *Kirk v. MacDonald,* 21 Mass. App. Ct. 21, 24 (1985) held that the plaintiffs had standing in a foreclosure action because they held attachments in the real estate and therefore had an interest in the property as junior lienors, in contrast to the situation in cases such as *Hogarth-Swann*, 274 Mass. 125, 132, 174 N.E. 314 (1931), and in *Razin v. Razin*, 332 Mass. 754 (1955), in which the parties had no interest in the disputed property and thus no standing.

Here, the Defendant is clearly not a proper party to utilize the statutory extra-judicial remedy to initiate the foreclosure action under G.L. c. 244 § 14 at the time it first published the auction of the Plaintiffs' primary residence. "Courts are not established to enable parties to litigate [defend] matters in which they have no interest affecting their liberty, rights or property". *Razin v. Razin*, 332 Mass. 754 (Mass. 1955).

Based Defendant(s) failure to account for all claimed predecessors in interest, as well as the conflicting publicly recorded documents, results in the Defendants failure to establish that it was in possession of a legally valid assignment of mortgage at the time of publication of the auction sale. Defendant is not a "mortgagee" as specifically defined under statute, and therefore cannot legally through with its intended foreclosure sale of the Plaintiff's real property.

II. <u>**Risk of Irreparable Harm to the Plaintiff if the Injunction is not Issued**</u>

In the context of a preliminary injunction, the only rights which may be irreparably lost are those not capable of vindication by final judgment rendered either at law or in equity. *Packaging Industrial Group v. Cheney, 380 Mass*. 609, 616 (1980). In this case, the Plaintiffs will lose their real property, and primary residence, if the requested injunction is not granted. Real property is unique and money damages are inadequate to redress a deprivation of an interest in land. *McCarthy v. Tobin*, 429 Mass. at 89.

Thus, if the Plaintiffs request for preliminary injunction is not granted by this court, he will be left with an inadequate damage remedy at law. The harm to the Plaintiff, should an injunction be denied to her, would be irreparable, and will incur far more injury to them than will be experienced by Defendant, should injunctive relief be granted. See *Gardner v. Lazure*, Mass. L. Rep. 239 (Mass. Super. Ct. 2000).

### III. Irreparable Harm to be Suffered by the Defendant(s) if the Injunction is Issued

Defendant faces considerably less risk of harm should the requested injunction issue. As stated above in this Memorandum, Defendant [in its current role], is no longer the Plaintiff's Lender. Moreover, Defendant fails to establish being in possession of the Plaintiffs' Note or valid assignment of mortgage.

Defendant faces significant problems in proving that it in fact it/they are a proper party to utilize the extra-judicial statutory under G.L. c. 244, § 14, where it has failed to account for the Plaintiff's Note or being in possession of a legally valid assignment of Mortgage (under the peculiarities of Massachusetts state law).

However, if it is later determined that Defendant was a bona fide assignee of the note and mortgage at the time it published the auction of the Plaintiffs residence, then the granting of the requested injunction will only potentially cost Defendant(s) time and possibly interest on whatever

money it would have made from the upcoming foreclosure auction sale. "Anything that can be repaired by the payment of money is not irreparable". *Norfolk County Hospital v.Commonwealth,* 25 Mass. App. Ct. 586, 593, *review denied,* 402 Mass. 1104 (1988); *Westinghouse Broadcasting Co. v. New England Patriots Football Club, Inc.* 10 Mass. App. Ct.70,72 (1980); K-mart Corp. v. *Oriental Plaza,* 875 F2d. 907, 914 (151Cir. 1989); *Sierra Club v. Larson,* 769 F. Supp. 410 (D. Mass. 1991), *aff'd, review denied* 2 F3d 462 (I" Cir. 1993).

**WHEREFORE,** the Plaintiff respectfully requests that this court grant Plaintiff's request for emergency injunctive relief, to preserve the status quo ante'.

        Respectfully submitted,
        Plaintiff
        By his Attorney,


        /s/Glenn F. Russell, Jr.
        Glenn F. Russell, Jr., Esq.
        BBO# 656914

        Law Office of Glenn F. Russell, Jr.,
        38 Rock Street, Suite #12
        Fall River, MA 02720
        (888) 400-9318
        (508) 938-0244

Dated: May 02, 2024

## CERTIFICATE OF SERVICE

I, Glenn F. Russell, Jr., hereby certify that on March 02, 2025, a copy of the foregoing

Document was served on all counsel of record through the ECF system and was sent via email to:

David Merritt
BERNKOPF GOODMAN, LLP
Two Seaport Lane, 9th Floor
Boston, MA 02210

                                                              /s/Glenn F. Russell, Jr.
                                                              Glenn F. Russell, Jr.